**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**JOSEPH FAULKNER,**
    **Petitioner,**


**v.**              **Civil Action No.: 3:18-CV-81**


**WARDEN JOE COAKLEY,**
     **Respondent.**


**<u>REPORT AND RECOMMENDATION</u>**

**I. INTRODUCTION**

On May 23, 2018, Petitioner, an inmate at Hazelton USP, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1.[1] On July 5, 2018, Respondent filed a Motion to Dismiss, or, in the alternative, for Summary Judgment, a memorandum in support thereof, and various exhibits to the memorandum.  ECF Nos. 11, 11-1 through 11-5.  On July 23, 2018, Petitioner filed a response to the motion to dismiss.  ECF No. 15.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied and dismissed with prejudice.

---

[1] ECF Numbers cited herein refer to case number 3:18-CV-81 unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.  First Conviction and Sentence[2]

On March 8, 2011, a four count indictment was returned in case number 1:11-CR-120 in the Northern District of Illinois, which charged Petitioner with four counts of distribution of a controlled substance.   ECF No. 14.   On November 22, 2011, a superseding information was filed which charged Petitioner using a communication facility in committing and causing or facilitating the commission of a felony violation, in violation of 21 U.S.C. § 841(a)(1).     ECF No. 57.   Also on November 22, 2011, Petitioner entered his plea of guilty to Counts 1 and 2 of the superseding information. ECF No. 59.

On May 14, 2012[3], the Court sentenced Petitioner to 91 months of incarceration, comprised of a 45-month term for Count 1 and a 46-month term for Count 2, to run consecutively to one another.  ECF No. 84.

### B.     Second Conviction and Sentence[4]

On September 26, 2013, an indictment was returned in case number 1:13-CR-772-2 in the Northern District of Illinois, which charged Petitioner and 23 co-defendants with various crimes[5].  ECF No. 2.  Petitioner, allegedly a high-ranking member of the

---

[2]   Throughout section II.A., all ECF numbers refer to entries in the docket of Criminal Action No. 1:11-CR-120 from the Northern District of Illinois, available on PACER.  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[3]   Petitioner's sentence was amended three times, on June 12, 2013 [ECF No. 102], on July 15, 2013 [ECF No. 103], and on August 14, 2013 [ECF No. 104].  The third amended judgment imposed the same term of incarceration, but added a recommendation that Petitioner be incarcerated in a Residential Drug Treatment facility as close to Chicago as possible.  ECF No. 104 at 2.

[4]   Throughout sections II.B., II.C., and II.D., all ECF numbers refer to entries in the docket of Criminal Action No. 1:13-CR-772-2 from the Northern District of Illinois.

[5]   In its memorandum opinion and order entered October 9, 2014, the District Court characterized

2

gang, was charged in: Count 1 with racketeering conspiracy; Count 2 with conspiracy to commit assault with a dangerous weapon; Count 3 with use of a firearm during a crime of violence and Count 9 with conspiracy to distribute heroin, cocaine and marijuana. ECF Nos. 2, 721.

In a later opinion, the Seventh Circuit Court of Appeals described the facts underlying Faulkner's convictions:

> Faulkner was a high-ranking member of the Imperial Insane Vice Lords, a Chicago street gang, also known as the Double I's. In 2011, he was prosecuted for heroin distribution that occurred in 2007 and 2008, and as well as charges related to heroin found in his apartment, discovered upon his arrest in February 2011. Following his arrest, Faulkner debriefed extensively with federal agents, explaining his role in the Double I's, their drug distribution activities, and the identities and roles of other gang members. He pled guilty to a superseding indictment asserting two counts of using a telephone to facilitate drug crimes. At his sentencing for the 2011 prosecution, the government sought, and the court imposed, an above-Guidelines sentence based upon the information Faulkner provided in his own debrief.
>
> In September 2013, while Faulkner remained in prison, the government indicted him again. He and ten other defendants were charged with drug trafficking through the Double I's organization or within its territory. [In] Count One . . . . [t]he government alleged that Faulkner conspired to distribute drugs at the Keystone from 1996 until his arrest in 2011. . . .
>
> . . . Counts Two and three, related to the shooting of Tony Carr in January 2010. . . . Carr sold marijuana near Double I territory but was not a member of the gang. Double I member Troy Ross and an accomplice broke into Carr's apartment in January 2010 and stole some marijuana. Carr found out that Ross was responsible and attacked him a few

---

the case, as a "multi-defendant case [which] charges putative members of the Insane Imperial Vice Lords street gang with a range of unlawful conduct including racketeering, armed violence, and drug distribution. ECF No. 721 at 1.

days later.  Faulkner and another Double I member came to the scene.  The other person helped Ross, but Faulkner did not intervene.

Carr ran away to his base of operations, a nearby cell phone store.  Faulkner, Ross, and the other Double I member followed a while later.  Ross pulled out a gun and shot Carr.  Again, Faulkner stood by and did nothing.  Faulkner was the only person charged in the Carr shooting.  Ross himself received full federal immunity and a reduced state sentence, which prosecutors called "a phenomenal deal."  According to Ross, Faulkner had ordered the shooting and provided the firearm.

Faulkner believed that the 2013 indictment concerned the very same drug distribution conduct that underlay his 2011 prosecution and sentencing. . . .

ECF No. 1859 at 2 – 3.

On October 22, 2014, Petitioner filed a notice of interlocutory appeal with the Seventh Circuit Court of Appeals, in that court's docket number 14-3332.  ECF Nos. 751, 798.  On July 15, 2015, the Seventh Circuit affirmed the District Court's denial of Petitioner's motion to dismiss.  ECF No. 1185.

During the pendency of the interlocutory appeal, a superseding indictment was returned which charged Petitioner and eleven co-defendants with various offenses.  ECF No. 863.  Petitioner was charged in the superseding indictment with racketeering conspiracy in Count 1, conspiracy to commit assault with a dangerous weapon in aid of racketeering in Count 2, discharge of a firearm during and in relation to a crime of violence in Count 3 and conspiracy to possess with intent to distribute and distribution of controlled substances in Count 9.  Id.  Following a bench trial, Petitioner was found guilty on December 8, 2015, of all four counts of the superseding indictment.  ECF No. 1326.  On June 23, 2016, Petitioner was sentenced to: 30 years for Counts 1 and 9,

which sentences were to run concurrently with one another and the sentence imposed in 1:11-CR-210[6]; 36 months for Count 2 to run concurrently with Counts 1 and 9 and the sentence imposed in 1:11-CR-210; and to 120 months for Count 3, which was to run consecutively to the sentences imposed on Counts 1, 2 and 9 and the sentence imposed in 11-CR-120. ECF No. 1566 at 2. The Court specified that "Defendant shall be given credit for time served on the sentence imposed on 11 CR 210." Id.

### C.    Appeal

On July 3, 2016, Petitioner filed a notice of appeal with the Seventh Circuit Court of Appeals, in that court's docket number 16-2860. ECF Nos. 1574, 1577. On March 19, 2018, the Seventh Circuit issued a final judgment and opinion which affirmed the order of the District Court. ECF Nos. 1858, 1859. On April 11, 2018, the Seventh Circuit denied Petitioner's motion for a rehearing. ECF No. 1863.

### D.    Post Appellate Proceedings

On June 20, 2018, an "Amended Judgment" was entered by the District Court which imposed a sentence of: thirty years on each of Counts 1 and 9 to run concurrently with each other and the sentence imposed in 11-CR-120; 36 months on Count 2 to run concurrently with Counts 1 and 9 and the sentence imposed in 11-CR-120; and 120 months on Count 3 to run consecutively to the sentences imposed on Counts 1, 2, 9 and the sentence imposed in 11-CR-120. ECF No. 1870 at 2. Petitioner was granted "credit for time served on the sentence imposed" in 11-CR-120. Id.

Petitioner has not filed a motion to vacate[7] under 28 U.S.C. § 2255 in the district

---

[6]  A later Amended Judgment corrected the case number to 11-CR-120. ECF No. 1870 at 1 – 2.

[7]  In the instant § 2241 petition, Petitioner asserts that as of May 18, 2018, "my attorney is currently drafting a petition for certiorari. Thus far I have not made it to a section 2255 stage." N.D.W.Va.

where he was convicted.

### E.    Instant Petition for Habeas Corpus Under § 2241[8]

Petitioner filed the instant petition for habeas corpus on May 23, 2018, along with five exhibits.  ECF Nos. 1, 1-1 through 1-5.  Therein, Petitioner claims that the Federal Bureau of Prisons ("BOP") unlawfully denied him credit for time served.  ECF No. 1 at 5.  Petitioner's main contention is that under the sentence imposed by the District Court in the Northern District of Illinois in 1:13-CR-772-2, he should have received full concurrency with his sentence in 1:11-CR-120.  Accordingly, he should receive credit for time served from March 5, 2010 through June 19, 2010, and from February 23, 2011 through the present.  Id. at 8.

Respondent's Motion to Dismiss, or, in the alternative, for Summary Judgment, a memorandum in support thereof, and various exhibits to the memorandum, were filed on July 5, 2018.  ECF nos. 11, 11-1 through 11-5.  Respondent argues that Petitioner has failed to exhaust his administrative remedies and that, regardless of the failure to exhaust, the BOP has properly calculated Petitioner's sentence and "awarded him all prior custody credit he is due," because a sentence cannot commence before it is imposed.  ECF No. 11-1 at 2,  4 – 5.

On July 23, 2018, Petitioner filed a response to the motion to dismiss.  ECF No. 15.  Essentially, Petitioner argues that the sentencing court intended to grant him full concurrency retroactive to 2010, and that equity merits such a result.  Id. at 6 – 12.  Petitioner contends that Respondent's sentence calculation denies him credit for time

---

3:18-CV-81, ECF No. 1 at 9.

[8] Throughout section II.E., all ECF numbers refer to entries in the docket of Civil Action No. 1:11-CV-206 from the Northern District of West Virginia.

served prior to imposition of sentence in case number 1:13-CR-772-2 as ordered by the court.

Petitioner concedes that he did not exhaust his administrative remedies, but claims that he did not do so because he was told any avenue of relief short of court intervention would be futile. ECF No. 15 at 5. Petitioner asks that if this Court finds he has failed to exhaust his administrative remedies, that the case be stayed or dismissed without prejudice so that he may later refile. Id. at 12.

## III.   LEGAL STANDARD

### A.   Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B.   Pro Se Litigants.

Courts must read pro se allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and

must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[9] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.    Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction.  By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated.  "In a § 2241 petition a prisoner may seek relief from such things as the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison

---

[9]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

conditions in the facility where he is incarcerated." Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004).

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.   In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a

plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for

summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which

a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).   Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).   Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Matsushita, supra, at 587-88. Anderson, supra, at 248-49.


## IV.   ANALYSIS

Petitioner concedes that he has failed to exhaust his administrative remedies. ECF No. 15 at 5.  However, he contends that further pursuit of administrative remedies would be futile, thereby justifying his petition under § 2241.  Id.   Administrative exhaustion is recognized by the courts as a prerequisite to filing a petition for habeas corpus under § 2241.  See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-90 (1973) ("The exhaustion doctrine is a judicially crafted instrument which

reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'"), Pelissero v. Thompson, 170 F.3d 442, 445 (1999). Here, Respondent has argued that Petitioner failed to exhaust his administrative remedies.

Petitioner contends that his failure to exhaust is permissible because any attempt to exhaust his administrative remedies would have been futile.   This Court has previously recognized that, "the exhaustion requirement in habeas corpus actions arising under § 2241—to the extent that exhaustion has been applied to such challenges—has no statutory mandate, but rather is judicially imposed. Consequently, a court may, in appropriate circumstances, exercise its discretion to waive the exhaustion requirement."  Jaworski v. Gutierrez, 509 F. Supp. 2d 573, 578 (N.D.W. Va. 2007).  In reaching its decision, the Court in Jaworksi relied on Larue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006), which held that "several federal circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the United States Court of Appeals for the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions."  509 F. Supp. 2d at 578.  Although it is undisputed that the Petitioner has failed to exhaust his administrative remedies prior to filing this petition, the undersigned finds that such administrative claims would have been futile in light of BOP policy.   Accordingly, assuming *arguendo* that Petitioner has exhausted, the undersigned finds that he is still not entitled to the relief he seeks.

The United States Supreme Court has long recognized that 18 U.S.C. § 3585(b) does not authorize a district court to compute a defendant's jail credit at sentencing. United States v. Wilson, 503 U.S. 329, 334 (1992).  Rather, it is the United States Attorney General, acting through the BOP, who is responsible for computing an inmate's term of confinement.  This computation includes the determination of when the sentence commenced and the amount of credit for time served following a federal conviction and sentencing.  Id. at 333.  In making this computation, the BOP must adhere to 18 U.S.C. § 3585 which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence, at the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the defendant was arrested; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

In Wilson, the Supreme Court expressly rejected Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing, reasoning that:

> Section 3585 indicates that a defendant may receive credit against a sentence that "*was imposed.*"  It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the sentence commences."  Congress' use of a verb tense is significant in construing statutes.  By using these verbs in

> the past and present perfect tenses, Congress has indicated
> that computation of the credit must occur after the defendant
> begins his sentence.  A district court, therefore, cannot apply
> § 3585(b) at sentencing.

Wilson, supra, at 333 (emphasis in original, internal citations omitted).

In the instant case, the Petitioner is seeking credit for the time he spent in federal custody for 1:11-CR-120, before he was sentenced in 1:13-CR-772-2.  Petitioner relies on the sentencing court's recommendation that he receive credit, and full concurrency, beginning in 2010.  ECF No. 1.  Consistent with the language of § 3585(b) and the holding of Wilson, the BOP calculated Petitioner's sentence to commence on the date of initial imposition of sentence, June 23, 2016.  ECF No. 11-1 at 4, ¶ 8.  Further, the BOP granted Petitioner a total of 556 days of prior custody credit toward his aggregate sentence, including the following dates: May 4, 2008; August 3, 2008: June 26, 2009; March 5, 2010 through June 19, 2010; February 23, 2011 through May 13, 2012.  Id. at 5, ¶ 13; 11-3 at 42.  However, the BOP did not award Petitioner credit, nor was he entitled to credit, for the time served after the commencement of his sentence in case number 1:11-CR-120 and prior to his sentencing in 1:13-CR-772-2.

Petitioner's first sentence in 1:11-CR-120 commenced on May 14, 2012.  ECF No. 11-3, N.D.Ill. 1:11-CR-120 ECF No. 84.  BOP was prohibited by statute from granting Petitioner prior custody credit from May 14, 2012, when he began serving his first sentence, until June 23, 2016, when his second sentence was imposed in 1:13-CR-772.  Accordingly, Petitioner has received all prior custody credit to which he was entitled, and his request for relief is without merit.

Having considered the pleadings and arguments of the parties, and the evidence in the light most favorable to the nonmoving party, it appears that there is no genuine

dispute as to any material fact presented.   Accordingly, the Respondent is entitled to judgment as a matter of law.

## IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.   I further **RECOMMEND** that Respondent's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [ECF No. 11] be **GRANTED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.   A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Report and Recommendation completes the referral from the District Court.

The Clerk is directed to terminate the Magistrate Judge's association with the case.

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** October 25, 2018

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE